HURLEY, Judge.
The state brings this appeaj from the suppression of oral communications and other physical evidence. The trial court found the affidavit in support of a wiretap order to be fatally stale due to a fifty-nine day lapse between the last event viewed by the affiant and the application for the intercept order. It concluded that there had been no showing of extraordinary circumstances to justify an exception to the “thirty day rule” of Rodriguez v. State, 297 So.2d 15 (Fla.1974). Our analysis impels us to disagree.
The affidavit in question is a nine page document. Without reprinting it in toto, suffice it to say that it amply demonstrates that the defendant, Manning, was continuously involved in large scale drug smuggling and was using his home telephone for this purpose. . Somewhat unusual is the fact that Manning, himself, is the source of most of this information. He had been arrested on a prior drug charge and agreed to cooperate with the police. As a result there began a six month liaison between Manning and the affiant. Manning described himself as a drug broker who never touched contraband but who used his home telephone for this business. He evidenced a detailed, personal knowledge of freighter activity and of foreign purchase operations. On one occasion he showed the police twenty-five to fifty thousand dollars in cash which he described as “dope money.” From February to August of 1978, he allowed the police to listen in on three separate telephone calls, made from his home, and involving large scale drug smuggling. As further corroboration of Manning’s involvement, the police received information from law enforcement agencies in two cities indicating that Manning’s home telephone number appeared on long distance listings of drug suspects in those cities.
August 7, 1978, was the date of the last telephone conversation that Manning permitted the police to overhear. It was with a person named Chris whom Manning had earlier named as his Miami connection. Chris stated that he was in Texas attempting to obtain a load of marijuana and despite the fact that the police had seized one load, he said that the marijuana was guaranteed and that he was going back until he got what he paid for. Shortly after this the police subpoenaed Manning’s telephone bills for May, June, July and August of 1978; they showed high volume long distance traffic. The police applied for and received the wire tap authorization on October 4, 1978.
The prime consideration in evaluating an affidavit in support of a wiretap is whether it shows probable cause to believe that an offense is being committed, or is about to be committed and that the telephone sought to be tapped is being used, or is about to be used, in connection with the offense. 934.09(3)(a) and (d). Timeliness of probable cause is essential and “ . the basic criterion as to the duration of probable cause is the inherent nature of the crime.” Bastida v. Henderson, 487 F.2d 860, 864 (5th Cir. 1973).
. [W]here an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. Id. at 864.
We discern this to be the thrust of the Supreme Court’s holding in Rodriguez, supra. The court was careful to characterize the thirty day measure as a “rule of thumb” and further noted that:
. “staleness” cannot be solved by a simple application of numbers of days without consideration of the overall particular circumstances presented by the case. Id. at 18.
Turning again to the case at bar we have a detailed account, from an impeccable source, of one individual’s participation in an ongoing criminal enterprise. Independent verification proved that Manning was not making inflated claims of self-impor *1309 tance. He was precisely what he claimed to be: a broker in a well organized, far-reaching drug syndicate. By his own admission, his home telephone was the tool of his trade. The August 7th conversation* with Chris indicated that the cycle was about to repeat itself; the load was guaranteed; Manning’s Miami source ■ was about to be replenished. The May, June, July and August phone bills corroborated Manning’s admissions and showed that the pace remained constant.
Rodriguez, supra, teaches that an affidavit must be read in its entirety, not in isolated bits and pieces. Our reading of the complete affidavit convinces us that the information contained in the wiretap application is sufficiently detailed and corroborated to constitute probable cause. Furthermore, the showing of a continuous and protracted criminal enterprise negates a finding of staleness. We note that our sister court was presented with a similar question in State v. Brainard, 376 So.2d 864 (Fla. 2d DCA 1979), and reached the same conclusion. See also Cuba v. State, 362 So.2d 29 (Fla. 3d DCA 1978).
We reverse the order of the trial court and remand the case for further proceedings consistent with this opinion.
MOORE, J., concurs.
BERANEK, J., dissents with opinion.